```
          IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

|   |   |
|---|---|
| DANN MARINE TOWING LC, | * |
| Plaintiff, | * |
| v. | * CIVIL NO.: WDQ-12-1610 |
| GENERAL SHIP REPAIR CORP., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Dann Marine Towing LC ("Dann Marine") sued General Ship Repair Corp. ("GSR") in admiralty for negligence and other claims arising out of a fire on the tug *Ivory Coast*. ECF No. 1. Pending are the parties' cross-motions for partial summary judgment. ECF Nos. 32, 35. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, Dann Marine's motion for partial summary judgment will be granted, and GSR's motion for partial summary judgment will be denied.

I. Background[1]

Dann Marine owns several tugs, including the vessel *Ivory Coast*, and provides marine tug and towing services. ECF Nos. 32-2 at 2, 32-14 at 13. GSR provides ship repair services and

---

[1] On cross-motions for summary judgment, "each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

had performed repairs on several of Dann Marine's vessels over the course of the 10 to 15 years before the incident that precipitated this suit. *See id.*; ECF No. 32-4 at 8-9.

Before October 2011, Dann Marine hired GSR to repair the *Ivory Coast*. *See* ECF No. 32-14 at 21-22. In an invoice dated September 30, 2011, GSR described the work and its charges for that work. ECF No. 32-2 at 8. One of the listed repairs was "to crop and renew the upper shear strake from the main deck edge 12" down the side shell in way of the engine room for [23] frame spaces." *Id.* at 9. When performing this repair, GSR agreed to "[p]rovide all necessary fire watch during all hot work." *See id.* At the top of the invoice, the document stated:

> IMPORTANT TERMS AND CONDITIONS: Work will be performed by us only upon the terms and conditions set forth on the reverse of this invoice/proposal which shall be deemed to have been accepted by the customer upon arrival of the vessel at our yard, or upon commencement of marine or non-marine work by us at any location. *Id.* at 8.

On October 4, 2011, GSR emailed the invoice to Dann Marine. ECF No. 35-4 at 1, 3-7. The referenced terms and conditions were not attached to the invoice. *See id.* However, GSR had used the same terms and conditions for many years, and they had been sent to Dann Marine several times when GSR had previously repaired Dann Marine's ships. *See, e.g.*, ECF Nos. 32-10 at 2-3, 32-12 at 2-4, 35-1 at 65. GSR's terms and conditions contained several provisions purporting to limit or disclaim GSR's

2

liability; one provision entirely disclaimed its liability for "damages or delays" and another provision limited its liability to $300,000 "[s]hould any provision of this contract exempting us from liability be declared or adjudged to be invalid." *See* ECF No. 32-11 at 6. Dann Marine did not sign the invoice or the terms and conditions for the *Ivory Coast* work, but GSR's President Charles Frederick Lynch, Jr. testified that Dann Marine often did not sign the contracts for work performed by GSR on its tugs. *See* ECF No. 35-1 at 64-65.

On October 5, 2011, the *Ivory Coast* was brought to GSR's shipyard for repair. *See* ECF No. 32-12 at 2. On October 10, 2011, GSR workers were using torches to cut out a portion of the *Ivory Coast*'s hull and replace it with new welded steel, when the tug caught fire.[2] *See* ECF No. 35-2 at 11-12, 63-64, 74-78. The *Ivory Coast* sustained extensive damage from the fire. *See, e.g.*, ECF No. 32-4 at 12-14. On October 25, 2011, GSR emailed Dann Marine its terms and conditions for its work on the *Ivory Coast*. ECF No. 35-4 at 8-9.

On May 30, 2012, Dann Marine sued GSR in admiralty for: (1) breach of contract (count one); (2) breach of implied warranty of workmanlike performance (count two); (3) negligence (count

---

[2] The cause of the fire and the extent and adequacy of GSR's fire safety precautions are disputed and are not at issue in these motions. *See, e.g.*, ECF Nos. 32-4 at 19-21, 32-14 at 43, 35-1 at 76, 82-83, 86, 35-2 at 70.

three); (4) gross negligence (count four); and (5) breach of bailment (count five). ECF No. 1. On September 26, 2012, GSR answered, asserting as a defense, *inter alia*, that the terms and conditions of the parties' contract "expressly preclude plaintiff from any recovery of any damages . . . , or in the alternative, limit[ GSR's] liability to the amount of $300,000.00 of any actual damage suffered and proven at trial." ECF No. 14 ¶ 31.

On January 13 and 30, 2014, after discovery, the parties cross-moved for partial summary judgment on the enforceability of the exculpatory ("red letter") clause in GSR's terms and conditions which allegedly limits GSR's liability to $300,000.[3] ECF Nos. 32, 35. GSR requested judgment that the clause was enforceable against Dann Marine, ECF No. 32; Dann Marine requested judgment that the clause was unenforceable, ECF No. 35. On February 18, 2014, GSR opposed Dann Marine's motion. ECF No. 36. On March 7, 2014, Dann Marine replied. ECF No. 37.

---

[3] The referenced terms and conditions contain two red letter clauses, one which disclaims all liability and the other which limits its liability to $300,000. See ECF No. 32-11 at 6. Although GSR references both clauses, it makes no argument to support the enforceability of the former clause, and, in its conclusion, requests that the Court grant its motion "limiting its liability, if any, to $300,000." ECF No. 32 at 8.

II. Analysis

    A. Standard of Review

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

---

[4] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

When cross-motions for summary judgment are filed, "each motion must be considered individually, and the facts relevant to each must be reviewed in the light most favorable to the nonmovant." *Mellen*, 327 F.3d at 363 (*citing Rossignol v. Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

B. Maritime Law

A contract to repair a ship is a maritime contract. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S. Ct. 886, 890, 6 L. Ed. 2d 56 (1961); *Sea Land Indus., Inc. v. Gen. Ship Repair Corp.*, 530 F. Supp. 550, 556 (D. Md. 1982). In an admiralty case, the court applies federal common law and can look to state law when federal maritime law is silent. *See Ost-W.-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*, 160 F.3d 170, 174 (4th Cir. 1998); *Wells v. Liddy*, 186 F.3d 505, 524-25 (4th Cir. 1999). State law may not be applied, however, when it conflicts with federal maritime law. *See Wells*, 186 F.3d at 525. Interpretation of a maritime contract's terms is a matter of law. *See In re Fitzgerald Marine & Repair, Inc.*, 619 F.3d 851, 858 (8th Cir. 2010).

In ship repair contracts,[5] courts will enforce a red letter clause if it: (1) is "expressed freely," (2) is "entered into

---

[5] *See Sander v. Alexander Richardson Investments*, 334 F.3d 712, 719 (8th Cir. 2003) (noting that the rules governing ship repair contracts may differ from those governing slip rental agreements--a different type of maritime contract--because of

6

freely by parties of equal bargaining power,"[6] and (3) does "not provide for a total absolution of liability." *See MP Leasing Corp. v. Colonna's Shipyard*, CIV.A. 2:07CV273, 2009 WL 2581575, at *7 (E.D. Va. May 8, 2009) (citing *La Esperanza de P.R., Inc. v. Perez y Cia. de P.R., Inc.*, 124 F.3d 10, 19 (1st Cir. 1997)); *Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 54-55 (5th Cir. 1967).[7] In admiralty cases, contractual language is construed "most strongly against the drafter," and ambiguous clauses are interpreted under maritime law, not state law. *Edward Leasing*, 785 F.2d at 888-89 (citing *Navieros Oceanikos, S.A. v. S.T. Mobil Trader*, 1977 A.M.C. 739, 745 (2nd Cir. 1977) (internal quotations omitted)); *MP Leasing*, 2009 WL 2581575, at *7. To be enforceable, red letter clauses must be "clear and unequivocal" and clearly indicate the parties' intentions. *Id.*; *Nathaniel Shipping, Inc. v. General Electric Co.*, 920 F.2d 1256 (5th Cir. 1991).

Here, the red letter clause states:

---

the differing natures of the contracts); *Edward Leasing Corp. v. Uhlig & Associates, Inc.*, 785 F.2d 877, 888-89 (11th Cir. 1986) (noting that several cases have applied different standards to towing contracts and ship repair contracts).

[6] Dann Marine does not argue that the parties had unequal bargaining power. See, e.g., ECF No. 35 at 7-8.

[7] But see, e.g., *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1014 (9th Cir. 1999) ("[E]xcept in towing contracts, exculpatory clauses are enforceable even when they completely absolve parties from liability for negligence . . . .").

> Should any provision of this contract exempting us from liability be declared or adjudged to be invalid, the Customer agrees that in no event shall our aggregate liability for all parties whether the Customer or others exceed the sum of $300,000.00 with respect to or arising out of any one vessel in event of claim, suit or other action by third parties.

ECF No. 35-4 at 9.

### 1. Dann Marine's Motion for Summary Judgment

GSR contends that the red letter clause--contained in the terms and conditions sent to Dann Marine after the fire--"was an enforceable component of [their] agreement," because in the ship repair industry it is common to send terms and conditions after the repair work is complete, and GSR had done several repair jobs in the past for Dann Marine under the same terms and conditions.[8]  See ECF No. 32 at 7.  Dann Marine does not

---

[8] Several courts have noted that "the custom in ship repair industry is to first do the repair work, and then send out the invoice which contains on it the contract."  See, e.g., *Hudson Waterways Corp. v. Coastal Marine Serv., Inc.*, 436 F. Supp. 597, 604-05 (E.D. Tex. 1977) (enforcing red letter clause); *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 265-66 (5th Cir. 2011).  In accordance with this custom--when the ship repairer has done work for the ship owner in the past under the same contractual terms--courts have enforced the terms of ship repair contractual documents sent to the owner of the ship after the repair work is completed.  See, e.g., *One Beacon*, 648 F.3d at 265-66 (affirming district court finding that parties had established a course of dealing incorporating invoice terms and conditions); *Alcoa*, 383 F.2d at 55 (concluding that red letter clause was enforceable against Alcoa when "the practice in the industry and the previous Alcoa-Ferran relations were sufficient to put Alcoa on full notice that the clause was implied in every repair contract").

seriously dispute that it is bound by the terms and conditions;[9] however, it argues that the red letter clause is unenforceable as a matter of law because it is not "clear and unequivocal." See ECF No. 35 at 10-12. GSR argues that the contract, viewed as a whole, and "Dann Marine's reasonable expectations and understanding," demonstrate that "the only logical interpretation of the contract is that Dann Marine agreed" to limit GSR's liability to $300,000. ECF No. 36 at 8. GSR also notes that GSR's printer erred in omitting the word "and" from the red letter clause, which "may have created a seeming ambiguity" in the clause's language. See id. at 8-9.

The plain language of the red letter clause limits its application to third party actions, by stating that it applies "with respect to or arising out of any one vessel *in event of claim, suit or other action by third parties*." ECF No. 35-4 at 9 (emphasis added). The instant suit is between the parties to the contract--GSR and Dann Marine--and is not a "third party" action; thus, it is outside the scope of the clause. Even if the clause could be considered "ambiguous," that ambiguity would prevent the clause from clearly and unequivocally limiting GSR's

---

[9] Dann Marine does not dispute that in the ship repair industry written contracts are customarily sent after the repair work is completed, or that GSR and Dann Marine had a 10-15 year business relationship under which each repair job performed by GSR was governed by GSR's standard terms and conditions that included the same red letter clause. See, e.g., ECF No. 35 at 8-10.

liability to Dann Marine.[10]  Accordingly, the red letter clause does not limit GSR's liability to Dann Marine.[11]  *See MP Leasing*, 2009 WL 2581575, at *8 (declining to limit defendant's liability for contractual consequential damages, because "[t]he portion of the red-letter clause Defendant relies on does not unambiguously or unequivocally establish that the consequential damages limitation applies to damages that arise out of breach of contract").

GSR contends that any interpretation of the red letter clause that would subject it "to unlimited liability in any claim by Dann Marine, and that only third parties would be subject to the $300,000 limitation" is "illogical" and against

---

[10] *See MP Leasing*, 2009 WL 2581575, at *8; *Jig Third Corp. v. Puritan Marine Ins. Underwriters Corp.*, 519 F.2d 171, 178 (5th Cir. 1975), *overruled on other grounds by E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986) ("Even assuming arguendo that the language of [the red letter clause] is ambiguous, it is certainly not clear and unequivocal in its warning that JIG III thereby waived its common law right to recover any damages to the PRINCESS which might result from Atlantic Marine's negligence."); *Edward Leasing*, 785 F.2d at 888.

[11] GSR contends that its red letter clause was similar to the red letter clause enforced in *Alcoa*. See ECF No. 32 at 5-6. However, unlike the clause at issue here--which specifies that it applies "in event of claim, suit or other action by third parties"--the language in *Alcoa* clearly and unequivocally stated that the liability limitation applied no matter the form of dispute.  See *Alcoa*, 383 F.2d at 55 (Defendant would "not be liable in respect to any one vessel, directly or indirectly in contract, tort or otherwise, to its owners * * * for any injury to such vessel * * * unless such injury is caused by our negligence * * * *and in no event shall our aggregate liability * * * exceed the sum of $300,000.00.*" (emphasis added)).

the parties' "reasonable expectations." See ECF No. 36 at 8. However, even if the provision does not make good business sense, the Court must enforce the parties' contract as-written, not the contract GSR wishes it had drafted. See *Kevin Gros Marine, Inc. v. Quality Diesel Serv., Inc.*, CIV.A. 11-2340, 2012 WL 1946132, at *3 (E.D. La. May 30, 2012) ("A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case.") (quoting *Young v. Merrill Lynch & Co.*, 658 F.3d 436, 448 (5th Cir. 2011) (internal quotations omitted)).[12] Moreover, contractual language, and any ambiguities therein, is construed against the drafter, GSR. See *Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*, 239 F. Supp. 2d 316, 322 (E.D.N.Y. 2003) (refusing to enforce disclaimer of liability, because ambiguities are construed

---

[12] Cf. *Jig Third*, 519 F.2d at 178-79 ("While there may be no magic words which are necessary to grant absolution for negligence, we have in this contract no plausible syllabization for such grace. . . . Limiting contractual language and limitless liability predicated upon negligence can coexist . . . . One can buy a pig in a poke, but only if the parties fashion their contract and compound their words with the pig's possible infirmities in mind."); cf. also *Coastal Iron Works, Inc. v. Petty Ray Geophysical, Div. of Geosource, Inc.*, 783 F.2d 577, 582-83 (5th Cir. 1986) (upholding the terms of a red letter clause because "[b]oth parties . . . appear to be large companies with extensive commercial experience and dealings. They possess sufficient business sophistication and bargaining power for us to conclude that they entered the repair contract knowingly and consensually.").

against the drafter, and defendant failed "to state plainly and precisely that its limit of liability extends to its own negligence"); *Sea Land*, 530 F. Supp. at 552-53, 567 (GSR's red letter clause did not limit its liability for its employee's failure to secure a land-based crane because clause by its terms only covered ship repair work and the clause "must be strictly construed against" the drafter, GSR).[13]  Finally, although GSR asserts that limiting liability for third party actions is "absurd" and against the parties' reasonable expectations, it also claims that the language it had intended to use for the red letter clause, if not for a "printer error," inserted the word "and" between the words "vessel" and "in."  ECF No. 36 at 1, 8-9.[14]  This language would have encompassed Dann Marine's claims

---

[13] But see *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988) (authorizing introduction of parol evidence to determine the meaning of an ambiguous red letter clause).

[14] GSR contends that "there was a mutual mistake by Dann Marine and [GSR] resulting from the failure of the agreement to use the word 'and' between the words 'vessel' and 'in.'"  ECF No. 36 at 6-7.  However, there is no evidence that any of the parties' contracts used this form of the red letter clause, *see, e.g.*, ECF Nos. 32-6, 32-7, or that Dann Marine agreed or intended to limit GSR's liability to it and the invoice failed to memorialize that agreement.  GSR's unilateral mistake in drafting the clause is not a basis for reforming its language. See *ATS Int'l Servs., Inc. v. Kousa Int'l, LLC*, CIV.A. RDB-12-2525, 2014 WL 1407290, at *6 (D. Md. Apr. 10, 2014) (reformation of language of maritime contract is only available in the event of mutual mistake or fraud or duress) (*citing* 28 Williston on Contracts § 70:209 (4th ed.) ("To obtain reformation . . . a petitioner must show that the parties came to an understanding but, in reducing it to writing and through some mutual mistake

*and* claims by third parties, demonstrating that--even under GSR's preferred language--GSR seeks to limit its liability in the event of third party suits.[15]

Accordingly, because this suit is not within the scope of the red letter clause limiting GSR's liability to $300,000, it is inapplicable to this suit. Dann Marine's motion for partial summary judgment will be granted.

2. GSR's Motion for Summary Judgment

GSR contends that the red letter clause is enforceable and limits its potential liability to Dann Marine. *See, e.g.*, ECF No. 36 at 4. It requests summary judgment limiting its liability, if any, to $300,000. *See* ECF No. 32 at 8. However, as discussed above, the red letter clause does not clearly and unequivocally limit GSR's liability to Dann Marine, the other party to the contract, only to third parties. *See supra* Section

---

(or through a mistake on one side and fraud on other), either omitted some provision agreed on or inserted one not agreed on. Reformation is only a mechanism to interject into writings those terms or provisions that the parties have agreed on."")).

[15] Language in the contract that instructs the customer that GSR is "willing to accept . . . different or more extensive liabilities," under certain conditions, does not exclude an interpretation of the red letter clause in which GSR's liability is only limited in the event of third party suits. *See* ECF No. 36 at 9. Moreover, the contract also states that the customer must "hold [GSR] harmless for any amount above [$300,000], including, if necessary, payment of said excess amount to said third parties." ECF No. 35-4 at 9. Thus, the first provision could be reasonably interpreted to allow the customer to avoid assuming liability to third parties for GSR's wrongdoing under the second provision.

II.B.1. Accordingly, GSR's motion for partial summary judgment will be denied.

III. Conclusion

For the reasons stated above, Dann Marine's motion for partial summary judgment will be granted, and GSR's motion for partial summary judgment will be denied.

__7/10/14__
Date

__/s/ William D. Quarles__
William D. Quarles, Jr.
United States District Judge